**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JACK DIAMOND,** | ) | **CASE NO.  5:23 CV 2363** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **VALUEHEALTH, LLC,** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **Defendant.** | ) | **AND ORDER** |

This matter is now before the Court on Defendant ValueHealth, LLC's ("ValueHealth")

*Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* (ECF #6), filed on

January 18, 2024.  Plaintiff Jack Diamond ("Diamond") filed an opposition to the motion on

February 9, 2024 (ECF #7).  ValueHealth filed a reply on February 27, 2024 (ECF #13).  The

motion is now ready for ruling.  For the reasons stated below, Defendant ValueHealth's *Motion

to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* (ECF #6) is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Litigation History Related to This Case

This case comes to the Court as essentially "Act III" of ongoing litigation between

Plaintiff Jack Diamond, entities Health Care Facilities Partners, LLC and SDP of Dallas

Holdings, LLC, and Defendant ValueHealth, LLC.

"Act I" was a case filed on May 24, 2021, in the United States District Court in Akron, Ohio, titled *Health Care Facilities Partners, LLC, et al. v. Jack Diamond, et al.*, Case No. 5:21-CV-1070 (U.S. Dist. Ct., N.D. Ohio),[1] in which numerous Plaintiffs, mostly sharing the name "HCFP" or "SDP,"[2] brought claims against Diamond and others,[3] alleging violation of the

---

[1]

The case was originally assigned to U.S. District Judge John R. Adams (*Docket 5:21-CV-1070, ECF #1 [Related Unnumbered Entry]*). An *Order of Recusal* was entered by Judge Adams (*Docket 5:21-CV-1070, ECF #26*) on the same day as the filing, and the case was then reassigned to U.S. District Judge Sara Lioi (*Docket 5:21-CV-1070, ECF #26 [Related Unnumbered Entry]*). On February 22, 2022, the case was reassigned to U.S. District Judge Bridget Meehan Brennan (*Docket 5:21-CV-1070, ECF #96 [Related Unnumbered Entry]*). To distinguish the references to Electronic Case Filing ("ECF") numbers, entries made in the initial federal court case are shown in italics. Entries related to the Docket in the case now before this Court are in standard text.

[2]

The *Complaint* notes, "Plaintiffs are separate, unaffiliated limited liability companies that are engaged in the ownership, development, operation, and/or management of various medical facilities located throughout the United States. These entities were formed over a period of years, on a project-by-project basis by a group of investors that have, depending on the time period, operated under either the 'Health Care Facilities Partners' or 'Surgical Development Partners' brands." (*Docket 5:21-CV-1070, ECF #1, ¶ 1*). For the purposes of this *Memorandum of Opinion and Order*, while most of the Plaintiffs in the "Act I" litigation utilized the letters "HCFP" in their name, and some others utilized the letters "SDP," the short form terms "HCFP" and "SDP" are specifically assigned later in this *Memorandum of Opinion and Order* to, respectively, Health Care Facilities Partners, LLC, an Ohio limited liability company in which Jack Diamond was a minority member, and SDP of Dallas Holdings, LLC, in which Diamond was also an investor.

[3]

Defendants named in the originally-filed *Complaint* were Jack Diamond (an investor in a number of the HCFP and SDP entities and the appointed manager of some of them), two other individual investors in the HCFP and SDP entities, and ValueHealth. (*Docket 5:21-CV-1070, ECF #1*). On August 13, 2021, Plaintiffs dismissed their claims against ValueHealth, pursuant a settlement, (*Docket 5:21-CV-1070, ECF #49*), which was memorialized by the Court three days later. (*Docket 5:21-CV-1070, ECF #50*). Approximately three months later, on November 12, 2021, Plaintiffs filed a *First Amended Complaint*, naming as Defendants Diamond and the two other individual investors (all of whom were, and still are, attorneys with the law firm of Brenna, Manna & Diamond, LLC ["BMD"]), BMD itself (based on a claimed simultaneous attorney-client relationship BMD had with both Plaintiffs and ValueHealth), and "John Does 1-99" and "Jane Does 1-99" (generically identified as other attorneys at BMD). (*Docket 5:21-CV-1070,*

Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* (the basis for federal court jurisdiction), and various state law claims of tortious interference with business relationship, breach of fiduciary duty, breach of contract, and legal malpractice, along with a claim seeking a declaratory judgment seeking a declaration of invalidity of an assignment by Diamond of his ownership in the HCFP and SDP entities to ValueHealth LLC. (*Docket 5:21-CV-1070, ECF #68*).

On June 1, 2022, the two other individually-named Defendants (*see* note 3), but not Diamond, were dismissed from the case with prejudice. (*Docket 5:21-CV-1070, ECF #127 [Joint Motion to Dismiss the pertinent two individually-named Defendants] & ECF #129 [Marginal Entry of Court granting motion]*). The claims against the other remaining Defendants, including Diamond, continued.

On June 5, 2023, the Court granted in part Diamond's motion for summary judgment, insofar as it related to the only federal claim in the *First Amended Complaint*, (*Docket 5:21-CV-1070, ECF #68*), asserting violation of the Defend Trade Secrets Act. (*Docket 5:21-CV-1070, ECF #254*). In the *Memorandum of Opinion and Order*, after granting judgment for Diamond on the federal claim, the Court declined to exercise jurisdiction over the remaining state law claims. (*Docket 5:21-CV-1070, ECF #254, PageID #10175*).

On August 18, 2023, the remaining parties notified the Court (Judge Brennan) that the parties in that case had reached a settlement, which was later memorialized in an *Order of Case Dismissal*, dated August 31, 2023. (*Docket 5:21-CV-1070, ECF #261*). The *Order of Dismissal* dismissed the case *without* prejudice, but directed the parties to thereafter submit a proposed and executed stipulation and order of dismissal *with* prejudice, which, if approved, would be entered

_____

ECF #68).

by the Court and would supersede the earlier "without prejudice" order. (*Docket 5:21-CV-1070, ECF #261*).  The *Proposed Stipulation of Dismissal With Prejudice* was filed by all Plaintiffs on October 6, 2023, (*Docket 5:21-CV-1070, ECF #262*), which the Court memorialized by an *Order* dated November 7, 2023.  (*Docket 5:21-CV-1070, ECF #262 [Related Unnumbered Entry]*).

"Act II" was a case filed on or about November 9, 2023, in the Summit County (Ohio) Court of Common Pleas titled, *Jack Diamond v. ValueHealth LLC*, Case No. CV-2023-11-4205 (Summit Cty. C.P.).  (ECF #1 [Notice of Removal], Ex. A, PageID #6).  The case was a one-count *Complaint* filed by Plaintiff Jack Diamond against Defendant ValueHealth LLC, asserting breach of contract and seeking damages against ValueHealth for the purchase price of the HCFP and SDP ownership shares that he contracted to sell to ValueHealth via a "Purchase and Sale Agreement" (and a later amendment to the agreement), the particulars of which constituted the underlying facts on which the claims of the "Act I" litigation were based,[4] as well as indemnification for certain loan obligations he carried related to his original purchase of HCFP and SDP shares as well as his litigation costs related to the "Act I" litigation.

"Act III" was the removal of the "Act II" case to this Court pursuant to 28 U.S.C. § 1441 & § 1446, based on diversity of citizenship under 28 U.S.C. § 1332.  (ECF #1).[5]

---

[4]

    This Purchase and Sale Agreement between Diamond and ValueHealth was not itself the direct basis for any claim in the "Act I" litigation, but the terms of the Purchase and Sale Agreement comprised key facts underlying the trade secret, tortious interference, fiduciary duty, breach of contract, legal malpractice, and declaratory judgment claims of that litigation.

[5]

    The "Opening Document" in the matter now before the Court is Defendant ValueHealth's *Notice of Removal*, which is identified as pleading "ECF #1." There is no independent ECF pleading number assigned to the *Complaint* filed in the state court case.  The *Notice of Removal* attached as an exhibit a copy of the complaint in the "Act II" state court litigation (for which it was assigned an "exhibit reference" ECF number of "ECF #1-1").  That exhibit (the state court

### B. **Pertinent Facts Related to the Motion to Dismiss in This Case**

The facts of this case are asserted in the *Complaint* (ECF #1) as follows, along with additional references to the text of a "Purchase and Sale Agreement" and "First Amendment to Purchase and Sale Agreement," attached as Exhibit A to the *Complaint*.[6]

Beginning from some time in 2014 through October 2023, Plaintiff Jack Diamond was a minority member of an Ohio limited liability company known as Health Care Facilities Partners, LLC ("HCFP"), and an investor in various medical facilities that utilized the moniker HCFP. (ECF #1, *Complaint*, ¶¶ 1 & 6). Beginning some time prior to that, Diamond was also a manager of HCFP and another "HCFP-named" entity named Health Care Facilities Partners Administration, LLC ("HCFPA"). (ECF #1, ¶ 6). ValueHealth was, and is, a digital health company which owns or operates ambulatory surgery centers in the United States. (ECF #1, ¶ 7).

In mid-2020, as part of its exploration into expanding its operations into Ohio markets, ValueHealth partnered with University Hospital Health Systems to form a joint venture to establish a network of surgery centers in Northeast Ohio. (ECF #1, ¶ 7). In connection with that effort, in March 2020, ValueHealth began exploring the purchase of an ownership interest in

---

complaint) is now the operative *Complaint* in the case before this Court. When reference is made to the allegations of the *Complaint* in this case, it will be referred to as the "*Complaint*" and identified by the ECF number assigned to the *Notice of Removal* to which it was attached, "ECF #1."

[6]

In addition to the allegations in the *Complaint*, on a motion to dismiss, the Court may also consider the text and terms of documents attached as an exhibit to the *Complaint*. *See Hall v. Sweet*, 666 F. App'x 469, 473-74 (6th Cir. 2016) ("[W]hen a court 'is presented with a 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein.'") (citing *Bassett v. Nat'l Collegiate Athletics Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

HCFP and HCFP-related entities.  (ECF #1, ¶ 7).  It is asserted in the *Complaint* that

ValueHealth first attempted direct negotiations with HCFP for an ownership interest in HCFP,

but that no contract or other agreement between ValueHealth and HCFP was formed.  (ECF #1,

¶ 7).

Later in 2020, ValueHealth began negotiating with Diamond for the purchase of

Diamond's membership interests in HCFP and other HCFP-related entities, and expressed its

interest in also purchasing the HCFP membership interests held by the two other minority

interest owners later named as Defendants in the "Act I' litigation.  (ECF #1, ¶ 8).

On October 29, 2020, a "Purchase and Sale Agreement" was signed by Diamond and

ValueHealth for the purpose of ValueHealth's purchase of Diamond's HCFP interests.  (ECF #1,

¶ 9 & Exhibit A).  On November 4, 2020, the Purchase and Sale Agreement was amended to add

to the sale Diamond's interests in HCFPA and another entity named SDP of Dallas Holdings,

LLC ("SDP").  (ECF #1, ¶ 9 & Exhibit A).  The Purchase and Sale Agreement and the

amendment are hereinafter referred to collectively as "PSA."

The pertinent terms of the initial PSA relevant to the motion briefing are as follows, with

the terms particularly important to the arguments raised in the motion briefing highlighted in

bold italic:

> This Purchase and Sale Agreement ("Agreement") dated October
> 29th, 2020 ("Effective Date") is made by and between Jack Diamond
> ("Seller") and ValueHealth, LLC ("the Buyer").
>
> RECITALS
>
> WHEREAS, [Diamond] holds 34% of membership interests in
> Health Care Facilities Partners, LLC, an Ohio limited liability company,
> ("Company") and

WHEREAS, [Diamond] wishes to sell and convey one hundred percent (100%) of his ownership interests in the Company (the "Transferred Units") to [ValueHealth], and [ValueHealth] wishes to purchase and acquire the same, on the terms and conditions set forth herein.

NOW THEREFORE, for good and adequate consideration, the receipt and sufficiency of which being hereby acknowledged, the parties hereto agree as follows.

Section 1. Purchase Price. *[The PSA contains a formula based on "full enterprise value" (with value adjustments taking into account possible changes in enterprise value over the time between signing and closing) . . . "minus outstanding Company debt as of the Effective Date, times 34%" (Diamond's percentage interest), . . . to be paid by [ValueHealth] "issuing to [Diamond] an equivalent value in membership units in [ValueHealth]," . . . with accompanying additional cash payments in the event of Diamond incurring certain tax liabilities].*

*Notwithstanding anything here to the contrary, [ValueHealth's] obligation to close any transaction contemplated herein will be subject to [ValueHealth's] completion of all reasonable financial, legal, and regulatory due diligence by [ValueHealth] to confirm the accuracy of all representations by [Diamond]. Should [ValueHealth's] due diligence disclose any material errors or misrepresentations by [Diamond], the Parties shall adjust the Purchase Price to a sum mutually agreed upon by the Parties.*

Section 2. Valuation of [ValueHealth]. [ValueHealth] shall obtain a neutral third-party valuation of its enterprise value by March 31, 2021.

Section 3. Sale: Closing. Within ten (10) days of receiving the valuation, [ValueHealth] shall issue the requisite number of membership units in [ValueHealth] that equal the Purchase Price ("Closing Date"). Should [ValueHealth] fail to issue the units within ten (10) days, [ValueHealth] shall pay the Purchase Price in cash to [Diamond] by May 1, 2021. *Upon payment of the Purchase Price by [ValueHealth], [Diamond] shall deliver any and all certificates representing Transferred Units to [ValueHealth] . . . .*

Section 4. Indemnity. *For and in consideration of the terms and conditions of this Agreement, upon the Effective Date, [ValueHealth] will indemnify [Diamond] and hold harmless [Diamond] from any claims and responsibilities of [Diamond] arising from or out of the*

-7-

*"Company Guarantees" or from activities of the Company or its members from the Effective Date forward. In addition, [Diamond] and [ValueHealth] will collectively work to cause Company to remove [Diamond] as a guarantor of the Company Guarantees. To the extent any lenders will not remove [Diamond] as a guarantor without a substitute guarantor, [ValueHealth] agrees to act as a guarantor in lieu of [Diamond]. . . .*

\* \* \* \* \*

Section 8. <u>Representations and Warranties of [Diamond].</u> [Diamond] hereby represents, warrants, and covenants to Company as follows:

a. *That [Diamond] is, and as of the Effective Date specified herein will be, the lawful owner of the Transferred Units, free and clear of any liens, pledges, security interests, encumbrances, and claims of any kind*;

b. *That [Diamond] has the full right and authority to sell and deliver the same in accordance with this Agreement, without consent or approval of any other person or entity and without complying with the terms of any transfer restrictions except those being complied with by the signatures set forth below*;

c. That no other contracts exist for the sale or transfer of Transferred Units, or any interest therein and [Diamond] will not seek to otherwise transfer the Transferred Units to any third party;

d. *That the delivery of this Agreement will, upon the Effective Date, transfer valid title to said Transferred Units to [ValueHealth], free and clear of all liens, pledges, security interests, encumbrances, and claims, of whatever nature, kind, or substance*;

e. That [Diamond] has been given full opportunity to ask questions and receive answers concerning the Transferred Units, the past and future operations and prospects of Company, and the sale of the Transferred Units pursuant to the terms hereof; and

f. That there are no unpaid capital contributions currently required (including any that are currently required but payable at a future date) with respect to such Transferred Units.

(ECF #1, Ex. A, *Purchase and Sale Agreement*) (emphasis and inserts supplied).

-8-

On November 4, 2020, the initial PSA was amended to add Diamond's ownership interest in HCFPA and SDP to the "Transferred Units" to be sold by Diamond and purchased by ValueHealth, and to amend the Section 4 indemnity provision of the initial PSA to add HCFPA and SDP to the portion related to "activities of the Company, *HCFPA, SDP*, or its members," and to add HCFPA and SDP to the list of entities from which Diamond was to be removed as a guarantor (or for which ValueHealth would be obligated to act as a "guarantor in lieu of Seller"). (ECF #1, Ex. A, *First Amendment to Purchase and Sale Agreement*).

After execution of the PSA, throughout the Fall of 2020 and Spring of 2021, ValueHealth entered into negotiations with HCFP in connection with ValueHealth's future status, and desire to be, an owner of HCFP. (ECF #1, ¶ 11). By the end of April 2021, no agreement between ValueHealth and HCFP had been reached. (ECF #1, ¶ 11).

As of May 1, 2021, no payment of ValueHealth stock, or payment in cash, had been made to Diamond by ValueHealth. (ECF #1, ¶ 12). Nor has Diamond tendered his ownership certificates in HCFP, HCFPA, or SDP – which he claims he is not obligated to do because he did not receive stock or cash from ValueHealth on May, 1, 2021. (ECF #7, *Plaintiff Jack Diamond's Memorandum in Opposition to Defendant's Motion to Dismiss*, PageID #117).[7]

On May 24, 2021, various HCFP entities filed suit against Diamond and ValueHealth in federal court in an action captioned *Health Care Facilities Partners, LLC et al. v. Jack Diamond,*

---

[7]
     Diamond's opposition to the motion to dismiss impliedly, but effectively, admits that he did not tender his shares, "What ValueHealth is actually arguing is that Diamond's Complaint should be dismissed because he did not allege that he tendered his certificates to ValueHealth – even though he was not paid for them. Thus, ValueHealth's argument seems to be that Diamond can only state a claim for breach of contract if he transferred his certificates to ValueHealth before he was paid[.]" (ECF #7, PageID #117).

*et al.*, Case No. 5:21-CV-1070 (referred to earlier as the "Act I" litigation) seeking declaratory

relief and asserting a claim for damages because of Diamond's entering into the PSA with

ValueHealth. (ECF #1, ¶ 13). Diamond states that he then tendered his defense in the "Act I"

litigation to ValueHealth, but that ValueHealth did not "defend" him in the action or "indemnify"

him in connection with the claims made against him. (ECF #1, ¶ 13).

      Diamond also asserts that ValueHealth has "refused to indemnify" him in connection with

the loan guarantee obligations Diamond owed related to his HCFP, HCFPA, and SDP ownership

interests. (ECF #1, ¶ 14). In late 2022, one of these loan obligations became due, and thereafter

went into default, ultimately requiring Diamond to pay $210,865.00 to satisfy his obligation on the

loan. (ECF #1, ¶ 15).

      In early November 2023, Diamond filed a one-count complaint in the Summit County

(Ohio) Court of Common Pleas alleging breach of contract, and seeking payment for the HCFP,

HCFPA, and SDP shares he was to tender under the PSA, as well as "indemnification" for his

litigation costs in the "Act I" litigation, as well as the amount he had to pay on the defaulted loan

obligation. (ECF #1, Ex. A). This filing was "Act II."

      The matter was thereafter removed to this Court pursuant to 28 U.S.C. § 1441 and § 1446,

based on diversity of citizenship under 28 U.S.C. § 1332, now comprising "Act III" of this

ongoing litigation. (ECF #1).

      ValueHealth has now filed a motion to dismiss the *Complaint*, pursuant to Federal Rule of

Civil Procedure 12(b)(6), based on the assertion that "Diamond's allegations make clear that he

cannot plead the necessary elements for his breach of contract claim," or, in the alternative, "even

assuming the Complaint did not suffer from this initial fatal flaw, the plain language of the

-10-

contract upon which Diamond relies forecloses certain of the alleged breaches that Diamond asserts." (ECF #6, PageID #47).

## II. LEGAL ANALYSIS

### A. Legal Standard on Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

A complaint filed in, or removed to, federal court is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Red Zone 12, LLC v. City of Columbus*, 758 F. App'x 508, 512 (6th Cir. 2019), quoting *Commercial Money Ctr. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (also noting that the standard is the same for both motions to dismiss filed under Fed. R. Civ. P. 12(b)(6) and motions for judgment on the pleadings under Fed. R. Civ. P. 12(c)). A trial court construes the complaint in the light most favorable to the nonmoving party, accepts the well-pled factual allegations as true, and determines whether the complaint contains enough facts to make the legal claims facially plausible. *Red Zone 12*, 758 F. App'x at 512, citing *Commercial Money*, 508 F.3d at 336, in turn citing *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tennessee Dept. of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that complaint must contain something more than a statement of facts that merely creates speculation or suspicion of a legally cognizable cause of action).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

-11-

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atl. Corp v. Twombly*, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but is "not akin to a probability requirement." *Ashcroft*, 556 U.S. at 678. In conducting this analysis, a court "need not accept the plaintiff's legal conclusions or unwarranted factual allegations as true." *Red Zone 12*, 758 F. App'x at 513, citing *Commercial Money*, 508 F.3d at 336. Although a court primarily considers the allegations in the complaint, "matters of public record, orders items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Red Zone 12*, 758 F. App'x at 513, citing *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1971)).

**B.  Application of the Pertinent Legal Standard to ValueHealth's Motion**

ValueHealth's arguments in connection with the breach of contract claim regarding the purchase and sale of the "Transferred Units" of Diamond's ownership interests are essentially that "Diamond has not, and cannot, sufficiently allege his own performance under the PSA," (ECF #6, PageID #61), because Diamond did not ultimately transfer his "Transferred Units" to ValueHealth. (ECF #6, PageID #62). Some clear questions of fact exist on this point (at least at this stage of the case), one in particular being the intent of the parties regarding the order of payment and tender under the PSA, as the PSA could *possibly* be interpreted as requiring payment by ValueHealth *before* tender by Diamond of his shares, *see* PSA, Section 3 ("Upon payment of the Purchase Price by [ValueHealth], [Diamond] shall deliver any and all certificates representing Transferred Units to [ValueHealth]") (ECF #1, Ex. A). On the other hand, questions of fact better left to discovery also seem to exist as to Diamond's ability to tender his ownership interests in these entities to

-12-

ValueHealth, especially given the (unresolved on the merits) issues of the "Act I" litigation regarding the validity of any assignment by Diamond of his ownership in the HCFP and SDP entities to ValueHealth LLC, as raised by the "HCFP" Plaintiffs in that case.

ValueHealth's other arguments regarding the purchase and sale aspects of the PSA, are essentially that "Diamond's prior material breach of the PSA excuses any of the alleged breaches by ValueHealth." (ECF #6, PageID #63). These arguments bring into play the same fact questions as its first argument, issues not fitting for resolution on a motion to dismiss.

ValueHealth's argument regarding a "duty to defend" is founded on the fact the Section 4 "Indemnification Clause" of the initial PSA does not specifically include the word "defend" among the indemnification provisions. ValueHealth cites a number of cases supporting the proposition, "[u]nder well-settled and governing Ohio law, the duty to defend is legally 'separate and distinct from the duty to indemnify,'" *see, e.g.*, *Wildcat Drilling, L.L.C. v. Discovery Oil & Gas, L.L.C.*, 172 Ohio St. 3d 160, 167 (2023); *W. Lyman Case & Co. v. Nat'l City Corp.*, 76 Ohio St. 3d 345, 347 (1996); *Pasco v. State Auto. Mut. Ins. Co.*, 2005-Ohio-2387, ¶ 15 ("[t]he duty to provide a defense . . . is separate and distinct from the duty to pay a judgment or an award of costs . . . [t]herefore, the breach of a duty to pay costs does not automatically entitle the insured to a damage award for the attorney's fees incurred by the insured in vindicating its rights . . . ."). ValueHealth further points the Court to the Ohio Supreme Court's decision in *Siltstone Servs., LLC v. Guernsey Cnty. Cmty. Dev. Corp.*, 161 N.E.3d 778, 797 (2020), where the Court explicitly held that, "Because the duty of a defense is separate from the duty to indemnify, and the contract between the parties did not provide for a right to a defense but only to indemnification, [Defendant] was not contractually obligated to provide a defense . . . .").

-13-

The Court has no quarrel with the accuracy of these citations, or with other cases cited in the briefing where a duty to defend was based on the existence of the explicit term "defend" being included within an indemnification provision, *see, e.g.*, *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St. 3d 238 (1987); *Allen v. Standard Oil Co.*, 2 Ohio St. 3d 122 (1982).  However, *none* of these cases stand for the proposition that the matter is one to be decided on a *motion to dismiss*.  *All* of these cited cases examined the issue within the context of motions for summary judgment.

ValueHealth's final argument presents an issue regarding the interpretation of the term "arose from," and whether the claims of the "Act I" litigation "arose from" HCFP's activities (which ValueHealth notes *would* be covered), Diamond's activities (which ValueHealth contends *would not* be covered), or perhaps whether HCFP's "activities" might properly be interpreted to *include* HCFP bringing the lawsuit against Diamond in the "Act I" litigation (the interpretation offered by Diamond).  The ultimate interpretation of this indemnification provision, and the intent of the parties in drafting it, also appears to be one best left to summary judgment litigation, and not one to be decided on a motion to dismiss.

### III.  <u>CONCLUSION</u>

For each of these reasons, Defendant ValueHealth's *Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)*, (ECF #6), is DENIED.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: _March 19, 2024_

-14-